**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | | |
|---|---|---|
| ROBERT H. BARNETT, Liquidating | * | |
| Trustee of the Sea Island Company | * | |
| Creditors Liquidating Trust, | * | |
| | * | |
| Appellant, | * | |
| v. | * | 2:16-cv-046 |
| | * | |
| KINGS POINT PROPERTY OWNERS | * | |
| ASSOCIATION, INC., | * | |
| | * | |
| Appellee. | * | |

---

**MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR SANCTIONS AND**
**SUPPORTING MEMORANDUM**

Pursuant to Local Rule 7 for the administration of civil cases in the United States District Court for the Southern District of Georgia, Kings Point Property Owners Association, Inc. (hereinafter "KPPOA") files this Motion to Enforce Settlement Agreement and for Sanctions and Supporting Memorandum against Robert Barnett, Liquidating Trustee of the Sea Island Company Creditors Liquidating Trust (hereinafter "Appellant"), representing to the Court as follows:

**INTRODUCTION**

KPPOA is in the unfortunate position of being forced to file this Motion to Enforce the Settlement Agreement and Request for Sanctions for Appellant's failure to abide by and honor the settlement that the Parties reached to resolve this matter. Despite correspondence from counsel for Appellant confirming that the Parties reached a settlement, as well as not less than three (3) affirmative representations to this Court that the Parties reached a settlement, Appellant now refuses to finalize the terms of the settlement. Instead, Appellant has simply informed KPPOA that it will no longer honor the agreement that it admits was entered into. Georgia law, which applies in

1

this instance, however, does not permit Appellant to simply disregard the accord between the Parties, and compels the Court to enforce its terms.  Further, this Court should enter sanctions against Appellant for its willful refusal to honor the settlement.

## **PROCEDURAL POSTURE AND JURISDICTIONAL STATEMENT**

As more fully set out in KPPOA's Appellee Brief, the present appeal arises from a Motion to Clarify Provisions Relating to the Implementation of the Confirmed Plan ("Motion to Clarify") seeking an order from the United States Bankruptcy Court for the Southern District of Georgia, Brunswick Division (the "Bankruptcy Court") clarifying and confirming that the intent under the Confirmed Plan and the Confirmation Order was for the "Purchased Assets" and the assets of Debtors' "Business," as those terms were defined by the October 19, 2010 Asset Purchase Agreement ("APA") between Debtors and Sea Island Acquisitions, LLC (hereinafter "SIA"), to be transferred from Debtors to SIA. [Docket No. 42].  The Kings Point Common Areas, which are the subject of this appeal, were included as part of the relief sought by the Motion to Clarify because the Kings Point Common Areas are part of the "Purchased Assets" and was an asset of Debtors' "Business" as those terms are defined by the APA.  By Order dated March 4, 2016, the Bankruptcy Court entered an Opinion and Order on the Motion to Clarify (the "Bankruptcy Court Order") finding that there was "no ambiguity and no question as to the intent of the [P]arties" with respect to the Debtors' obligation to "convey **all** of the Owned Real Property, including the Common Areas, to [the Purchaser] and **none** of the Owned Real Property was to be excluded from the required conveyance." [United States Bankruptcy Court for the Southern District of Georgia, Chapter 11 Case Number 10-21034, Docket. 1494]. Accordingly, the Bankruptcy Court ordered that the Kings Point Common Areas be conveyed by Debtor to SIA and authorized KPPOA to thereafter file a Quitclaim Deed from SIA to KPPOA for the Kings Point Common Areas.

2

Appellant timely appealed the Bankruptcy Court Order to this Court on March 18, 2016, which appeal was docketed as Case No. 2:16-CV-26 (the "Appeal").

"The filing of a proper notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the appellate court and divests the trial court of its control over those aspects of the case involved in the appeal." *See Walden v. Walker*, 515 F.3d 1204, 1211 (11th Cir. 2008); *accord In Re Cotton,* 250 Fed. Appx. 968, 969–70 (11th Cir. 2007)(finding that the filing of a notice of appeal divest the bankruptcy court of jurisdiction over the matters on appeal while the appeal to district court was pending); *RES-GA Cobblestone, LLC v. Blake Const. & Dev., LLC,* 718 F. 3d 1308, 1314 (11th Cir. 2013)(holding that the trial court was divested of jurisdiction to enter a consent order during an appeal where the issues in the consent order "were either already before us on appeal or inextricably intertwined with the parties' continued litigation of those issues"). Moreover, federal district courts have the inherent power to summarily enforce settlement agreements entered into by party litigants in cases pending before the court. *See BP Products N. Am., Inc. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1132 (M.D. Fla. 2007) ("[A] district court has jurisdiction to enforce a settlement agreement, at least when one party refuses to abide by the agreement prior to dismissal of the action." (*citing Kent v. Baker,* 815 F.2d 1395, 1400 (11th Cir. 1987)). Accordingly, this Court has jurisdiction to enforce the Parties settlement as requested herein.

## STANDARD OF REVIEW

"The construction and enforcement of settlement agreements are governed by principles of the state's general contracts law." *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985); *see also Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999) ("In general, the law of contracts governs the construction and enforcement of settlement agreements. We also refer to state law

principles when reviewing the scope of an attorney's authority to enter into a settlement agreement"); *Fitzhugh v. AB McDonough's, Inc.*, 2017 WL 937965 at *1 (S.D. Ga. Mar. 9, 2017)("[f]ederal courts 'use the applicable state's contract law to construe and enforce settlement agreements'")(*citing Vinnett v. Gen. Elec. Co.,* 271 Fed. Appx. 908, 912 (11th Cir. 2008)). Under Georgia law, "in order to succeed on a motion to enforce a settlement agreement, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the [non-movant's] case." *See Fitzhugh*, 2017 WL 937965 at *2 (*citing DeRossett Enterprises, Inc. v. Gen. Elec. Capital Corp.,* 621 S.E.2d 755, 756 (Ga. Ct. App. 2005)). Because the same standards apply to a motion to enforce settlement agreement as a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Id.*

**STATEMENT OF THE UNDISPUTED FACTS GIVING RISE TO THE SETTLEMENT**

By Order dated March 2, 2017, this Court established a briefing schedule for this Appeal, providing that Appellant file its brief on or before April 3, 2017, that KPPOA file its brief thirty (30) days after service of Appellant's brief, and that any reply filed by Appellant be filed fourteen (14) days after KPPOA's brief was filed and served. [Docket No. 22].  Appellant filed its brief on March 31, 2017.  [Docket No. 23]. On April 17, 2017, after Appellant filed its Brief, the Parties filed a Joint Motion for Extension of Time to File Appellee Brief requesting that the Court extend the time for KPPOA to file its brief and Appellant to file any reply brief representing to the Court that "[t]he Parties have engaged in discussions to resolve this case and the purpose of the proposed extension of time is to allow the Parties sufficient time to explore settlement." [Docket No. 26]. Thereafter on June 27, 2017, the Parties filed a second Joint Motion for Extension of Time to File Appellee Brief requesting that the Court extend the time for KPPOA to file its brief and Appellant

4

to file any reply brief expressly representing to the Court that **"[t]he Parties have reached a settlement of this matter,**…." [Docket No. 28].  The second Joint Motion for Extension of Time to File Appellee Brief was joined in and signed by counsel for Appellant.  *Id.*  In response to this Motion, the Court entered an Order staying the Appeal and directing the Parties to file a status report with the Court not later than October 1, 2017.

On September 29, 2017, the Parties filed a Joint Status Report with this Court again representing to the Court that "[a]s previously reported, **the Parties have reached a settlement of this appeal (the "Settlement")**…." and further that the Parties "… are currently in the process of finalizing the settlement documents **to reflect the Parties agreement**." [Docket No. 36].  Again, the September 29, 2017 Joint Status Report was joined in and signed by counsel for Appellant. *Id.* By direction of the Court, the Parties filed another Joint Status Report on February 5, 2018 in which it was again affirmed that "[t]he Parties previously reported to the Court that the Parties had reached a settlement of this appeal,…." [Docket No 39].  Again, the February 5, 2018 Joint Status Report was joined in and signed by counsel for Appellant. *Id.*

The settlement agreement in this case was consummated on June 23, 2017. *See* the Affidavit of Jason M. Tate attached hereto as Exhibit B (hereinafter "Tate Aff."), at ¶ 19.  As noted above and previously represented to the Court, the Parties were engaged in extensive discussions regarding the settlement of this case, as well as a related proceeding in the Bankruptcy Court styled *Kings Point Prop. Owners Ass'n, Inc. v. Sea Island Co.*, Case No. 16-02015 seeking the reformation of the defective Quitclaim Deed for the Kings Point Common Areas which created the current predicament (the "Reformation Action"). *See* Tate Aff., *generally and* Affidavit of Thomas R. Walker attached hereto as Exhibit C (hereinafter "Walker Aff."), *generally.* On April 3, 2017, counsel for KPPOA and counsel for Appellant participated in a conference call that was scheduled

at the request of counsel for Appellant for the purpose of discussing settlement. *See* Tate Aff. at ¶ 14 *and* Walker Aff. at ¶ 4. In this call, counsel for Appellant made a verbal offer to settle and resolve the present appeal and the Reformation Action in exchange for the payment of $150,000.00 from KPPOA. *See* Tate Aff. at ¶ 15 *and* Walker Aff. at ¶ 5. During this call, the Parties specifically discussed the dismissal of the present appeal and the Reformation Action with prejudice, as well as a mutual release between the Parties. *See Id.* KPPOA ultimately rejected this offer by submitting a counter offer to settle and resolve the dispute between the Parties regarding the Kings Point Common Areas for a lesser sum of money. *See* Tate Aff. at ¶ 16 *and* Walker Aff. at ¶ 5. KPPOA's offer was not contingent on any new or additional terms of the settlement that were not previously discussed in the April 3, 2017 conference. KPPOA's counter-offer only deviated from the terms discussed in the April 3, 2017 conference in the amount of money that would be paid by KPPOA to Appellant. *See Id.*

Thereafter, the Parties continued to discuss the settlement and resolution of this appeal and the Reformation Action, with the primary issue being the amount of money that KPPOA would be willing to pay to bring the litigation between the Parties to a close and clear title to the Kings Point Common Areas. *See* Tate Aff. at ¶ 16 *and* Walker Aff. at ¶ 6. After further conversations between the Parties, on or about June 20, 2017, counsel for Appellant called counsel for KPPOA and offered to settle and resolve the present appeal and the Reformation Action for the payment of $100,000.00 from KPPOA. *See* Tate Aff. at ¶ 18. Counsel for KPPOA verbally accepted this offer on June 23, 2017. *Id.* At that time, Counsel for the Parties discussed the form of the settlement documents, including the dismissal of the present appeal and the Reformation Action with prejudice, as well as a mutual release between the Parties. *Id.* The only new condition that was placed on the settlement by Appellant at that time was that the Parties would submit the settlement to the United States

6

Bankruptcy Court for the Southern District of Georgia for approval, which KPPOA agreed to. *Id.* At the conclusion of the call, counsel for KPPOA asked counsel for Appellant to send an email confirming the settlement. *See Id.*, at ¶¶ 19-21.  True and accurate copies of emails between the Parties regarding settlement are attached hereto collectively as Exhibit A and have been bates stamped 1 through 157 for the Court's convenience. *See* Tate Aff. at ¶ 5.

On June 27, 2017, counsel for KPPOA sent a follow up email reminding counsel for Appellant to send an email confirming the settlement. *See Id.*, at ¶ 21; *see also* Exhibit A, p. 2.  On June 27, 2017, counsel for Appellant sent an email to counsel for KPPOA stating in its entirety:

> **<u>We have an agreement to settle for $100,000.</u>** We will need to file a Rule 9019 motion to get the settlement blessed by the bankruptcy court. We will take a shot at that motion and an agreement and get a draft to you.  I guess we should extend time with district court re appeal and briefs while we get the settlement accomplished.  What do you think?

*See* Tate Aff. at ¶ 22; *see also* Exhibit A, at p. 3; Walker Aff. at ¶ 8.  Also on June 27, 2017, the Parties filed the second Joint Motion for Extension of Time to File Appellee Brief requesting that the Court extend the time for KPPOA to file its brief and any reply brief expressly notifying and representing to the Court that **"[t]he Parties have reached a settlement of this matter,**…." [Docket No. 28]; *see also* Tate Aff., at ¶ 24.

On August 31, 2017, counsel for Appellant sent counsel for KPPOA the proposed Settlement Documents (hereinafter the "First Proposed Settlement Documents"). *See Id.*, at ¶ 24 *and* Walker Aff. at ¶ 8; *see also* Exhibit A, at p. 4.  The First Proposed Settlement Documents **<u>drafted by counsel for Appellant</u>** reflected the material terms that were agreed upon by the Parties through the settlement discussions with two exceptions. *See* Tate Aff. at ¶¶ 26-31 *and* Walker Aff. at ¶ 11; *see also* Exhibit A, pp. 4-8. As discussed and agreed upon by the Parties, the First Proposed Settlement Documents drafted by counsel for Appellant provided for the dismissal of the present Appeal with prejudice, and provided for the Parties to file a Stipulation of Dismissal of the

7

Reformation Action. *See* Tate Aff. at ¶¶ 27-28; *see also* Exhibit A, pp. 8-9, ¶¶ 2-4. Notably, and what will be of significance later, the First Proposed Settlement Documents included a mutual release between the Parties, including a release by Appellant of the Kings Point Common Areas. *See* Tate Aff., at ¶¶ 29-30 *and* Walker Aff. at ¶ 11; *see also* Exhibit A, at p. 9, ¶ 4.

The First Proposed Settlement Documents, however, also included a request that KPPOA consent to the vacatur of the Bankruptcy Court Order. *See* Tate Aff., at ¶ 31 *and* Walker Aff. at ¶ 11; *see also* Exhibit A, at p. 13, 24. This was not a term of the settlement that was ever discussed by the Parties at any point in the settlement discussions. *See* Tate Aff. at ¶ 32 *and* Walker Aff. at ¶ 11. The First Proposed Settlement Documents also failed to failed to exclude the unrelated scheduled claims that were field by KPPOA in the underlying bankruptcy case for the non-payment of HOA assessments (collectively, the "Allowed Scheduled Claims") from the mutual release provisions. *See* Tate Aff. at ¶ 33 *and* Walker Aff. at ¶ 11.

On September 27, 2017, counsel for KPPOA sent the First Proposed Settlement Documents back to counsel for Appellant with the only significant revisions to the First Proposed Settlement Documents being: (1) the removal of the new condition to vacate the Bankruptcy Court Order that Appellant was seeking to subsequently add as a condition to the settlement; and (2) the exclusion of the Allowed Scheduled Claims from the mutual release provision. *See* Tate Aff. at ¶ 35 *and* Walker Aff. at ¶ 11; *see also* Exhibit A, at pp. 35, 37, 40-47, 48-58. The September 27, 2017 email from counsel for KPPOA to counsel for Appellant read in relevant part:

> Please find the proposed Settlement Documents with my edits attached. The only changes that I made are to remove any reference to the vacatur of the March 4, 2016 order, which, as you know was not a condition or term of the settlement. Otherwise, it is largely unchanged. I have a call into Tom to ask him a bankruptcy related question about the release – it is my recollection that KPPOA filed an unrelated proof of claim in the bankruptcy case for pre-petition HOA assessments owed by some or all of the Debtors (this was beyond the scope of my involvement in this case). I need to ensure that this is not covered by the release language that you

8

proposed.  Other than any changes that may be required to ensure that this unrelated claim is not released, I think that we are good to go.

*Id.*, at p. 35.

In response, counsel for Appellant notified counsel for KPPOA on October 16. 2017 that the unwillingness to agree to this new condition related to the vacatur of the Bankruptcy Court Order created a problem. *See* Exhibit A, at p. 64. Appellant did not raise any issue with the exclusion of the Allowed Scheduled Claims from the mutual release. *See* Tate Aff. at ¶ 38 *and* Walker Aff. at ¶ 12; *accord* Exhibit A, at p. 64.  In fact, Appellant has never disputed that the exclusion of the Allowed Scheduled Claims from the mutual release was an original term of the Parties settlement. *See* Tate Aff. at ¶ 38 *and* Walker Aff. at ¶ 12.

The conference call between the Parties to discuss the vacatur issue that was scheduled for October 16, 2017 did not occur the next day as planned. *See* Tate Aff. at ¶ 39.  Thereafter, counsel for the Parties discussed the addition of the new vacatur condition in an email chain that started on October 24, 2017 and culminated on October 27, 2017. *See Id.* at pp. 68-70.  In summation, counsel for KPPOA informed counsel for Appellant that the new condition was not acceptable because the title company was willing to issue a title insurance policy with the Bankruptcy Court Order in place, and that the vacatur of the Bankruptcy Court Order brought the ability to get insurable title for the Kings Point Common Elements into question. *See* Tate Aff. at ¶¶ 40-44; *accord* Exhibit A at 68-70. In this exchange, Counsel for Appellant acknowledged that the request to vacate the Bankruptcy Court Order was not an original term to the settlement, but that he was getting push back from Appellant about going forward with the settlement if this new condition were not accepted by KPPOA. *See* Tate Aff. at ¶ 45 *and* Walker Aff. at ¶ 12; *accord* Exhibit A at p. 68. ("[T]he vacatuer[sic] wasn't initially included … I have acknowledged as much.").

Ultimately, in an effort to try to salvage the settlement, counsel for Appellant provided new proposed Settlement Documents on November 21, 2017 (hereinafter "Second Proposed Settlement Documents"). *See* Tate Aff. at ¶ 46; *accord* Exhibit A at p. 72. The Second Proposed Settlement Documents removed the request that the Bankruptcy Court Order be vacated in its entirety, and instead provided that the Bankruptcy Court Order would be vacated only to the extent its application reached beyond the Kings Point Common Elements and KPPOA.[1] *Id*. at p. 76.  Notably, like the First Proposed Settlement Documents, the Second Proposed Settlement Documents drafted by counsel for Appellant still provided for the dismissal of the present Appeal with prejudice, provided for the Parties to file a Stipulation of Dismissal of the Reformation Action, and included a mutual release between the Parties, including a release by Appellant of the Kings Point Common Areas. *Id*. at pp 3-4.  Significantly, the mutual releases in the Second Proposed Settlement Documents specifically excluded any other claims asserted by KPPOA in the bankruptcy case unrelated to the Kings Point Common Areas, including the Allowed Scheduled Claims. *Id*., at p. 93, ¶ 5. On November 27, 2017, counsel for KPPOA agreed to the Second Proposed Settlement Documents with some revisions. *See* Tate Aff. at ¶ 54; *accord* Exhibit A at pp. 98-126.

The very next day, on November 28, 2017, counsel for Appellant provided new proposed Settlement Documents (hereinafter "Third Proposed Settlement Documents"). *See* Tate Aff. at ¶ 55; *accord* Exhibit A at p. 127.  Like the First Proposed Settlement Documents and Second Proposed Settlement Documents, the Third Proposed Settlement Documents still provided for the dismissal of the present Appeal with prejudice and provided for the Parties to file a Stipulation of Dismissal of the Reformation Action. *Id*., at p. 132. Unlike the First Proposed Settlement Documents and Second

---

[1] The primary changes to the Second Proposed Settlement Documents involved removing all reference to the request to vacate the Bankruptcy Court Order that were found in the First Proposed Settlement Documents, and then adding the language at page 4 (page 76 of Exhibit A).

Proposed Settlement Documents, the Third Proposed Settlement Documents drafted by counsel for Appellant removed any reference to the request to vacate the Bankruptcy Court Order. *Id.*, at p. 131. In addition, for the first time, the Third Proposed Settlement Documents removed all release language between the Parties, including any release by Appellant with respect to the Kings Point Common Areas. *See* Tate Aff. at ¶ 57 *and* Walker Aff. at ¶ 14; *accord* Exhibit A at pp. 132-133.

Counsel for KPPOA immediately notified counsel for Appellant that the changes to the Third Proposed Settlement Documents were not acceptable. *See* Tate Aff. at ¶ 58. In response, counsel for Appellant provided new proposed Settlement Documents on November 29, 2017 (hereinafter "Fourth Proposed Settlement Documents"). *See* Tate Aff. at ¶ 59; *accord* Exhibit A, at p. 138. The Fourth Proposed Settlement Documents were identical in substance to the Third Proposed Settlement Documents with the exception of the insertion of Paragraph 4. *See* Tate Aff. at ¶ 60; *accord* at p. 141. At that point, Appellant refused to make any further revisions to the Fourth Proposed Settlement Documents. *See* Tate Aff. at ¶ 64 *and* Walker Aff. at ¶ 15.

To date, no settlement documents have been executed by the Parties. *See* Tate Aff. at ¶ 64 *and* Walker Aff. at ¶ 15. The only issue precluding the completion of the Parties settlement is Appellant's refusal to agree to a mutual release between the Parties, as had been previously discussed and was agreed to by the Parties. *Id.* The First Proposed Settlement Documents, as revised by Counsel for KPPOA to remove and reference to the vacating of the Order, but including mutual releases that exclude the Allowed Scheduled Claims, accurately represent the settlement terms agreed upon by the Parties. *Id.*

## ARGUMENT AND MEMORANDUM OF LAW

The Parties undeniably reached a settlement as reflected not only by their correspondence, but the affirmative representations to the Court confirming the settlement. The correspondence

11

between the Parties and the Parties' representations to the Court clearly reflect that there is no dispute that there was a settlement in this case, thereby removing any question of fact as to the existence of the settlement.  The terms of the settlement are equally undisputed as they are clearly reflected in the First Proposed Settlement Documents which was prepared by counsel for Appellant and was accepted by KPPOA with the exception of the new condition regarding the vacator of the Bankruptcy Court Order and the exclusion of the Allowed Scheduled Claims from the Parties mutual release. There is no dispute that the request to vacate that Bankruptcy Court Order was not an original condition to the settlement, or that the Parties agreed that the Allowed Scheduled Claims would be excluded from the Parties mutual release.

In light of the attached correspondence and affirmative representations to the Court, Appellant cannot, in good faith, dispute that there was a settlement between the Parties, or that the settlement did not include the vacatur of the Bankruptcy Court Order or exclude the Allowed Scheduled Claims from the Parties mutual release. In light of the attached correspondence and affirmative representations to the Court, KPPOA is entitled to an order enforcing the terms of the Parties settlement as reflected by the First Proposed Settlement Documents that were prepared by counsel for Appellant with the September 27, 2017 revisions by KPPOA removing any reference to Appellant's request to vacate the Bankruptcy Court Order - which was admittedly not a term of the Parties settlement – and excluding the Allowed Scheduled Claims from the Parties mutual release. This matter would be closed, and the litigation between the Parties would be concluded, but for Appellant's efforts to renegotiate the terms of the settlement to add its request to vacate the Bankruptcy Court's Order as a new condition. Accordingly, KPPOA is also entitled to an award of sanctions for Appellant's bad faith refusal to honor the terms of the settlement, and for being forced to file this Motion to compel Appellant to finalize the Parties' settlement.

I.     **THE PARTIES ENTERED INTO AN ENFORCEABLE SETTLEMENT UNDER GEORGIA LAW WHICH THE COURT IS COMPELLED TO ENFORCE.**

The enforcement of the settlement between KPPOA and Appellant is governed by Georgia law.  As an initial matter, a settlement agreement is a contract under Georgia law, the enforcement of which is governed by the "basic principles of contract formation and enforcement." *Thompson v. Pulte Home Corp.,* 209 Ga. App. 558, 560, 434 S.E.2d 89, 91 (1993).  In *Wong*, 752 F.2d at 621, the 11th Circuit summarized the enforcement of a settlement agreement under Georgia law as follows:

> Under Georgia law, an agreement in settlement of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract. Thus, there must be a meeting of the minds between the parties as to the terms of the contract. Assent to the terms of the agreement can be implied from the circumstances, and conduct inconsistent with a refusal of the terms raises a presumption of assent upon which the other party can rely.  An attorney's consent to the agreement is binding on his client.

Moreover, "a settlement agreement, even though not yet reduced to a writing, may be enforceable." *Warren v. Turner Sec., Inc.*, 2008 WL 11322955, at *3 (N.D. Ga. Jan. 14, 2008) (*citing Jorgensen v. Alsop*, 524 S.E.2d 272, 272-73 (Ga. App. 1999)).  But, "[w]here the very existence of the [settlement] agreement is disputed, it may only be established by a writing." *See Scott v. Carter*, 239 Ga. App. 870, 521 S.E.2d 835 (1999).  Letters or other documents prepared by attorneys which memorialize the terms of the agreement are sufficient to enforce the settlement. *Id.*

As a matter of policy, Georgia law "favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced." *Vildibill v. Palmer Johnson of Savannah, Inc.,* 244 Ga. App. 747, 748(1), 536 S.E.2d 779 (2000).  The 11th Circuit likewise "..favor[s] and encourage[s] settlements in order to conserve judicial resources." *Murchison v. Grand Cypress Hotel Corp.,* 13 F.3d 1483, 1486 (11th Cir. 1994). More specific to this context, "[c]ompromises are favored in bankruptcy, especially where protracted litigation can

erode the value of the estate and delay the administration of the case to the detriment of all creditors." *See Harbour E. Dev.*, 2012 WL 1851015, at *5) (citations omitted).

In *Superglass Windshield Repair, Inc. v. Mitchell*, 233 Ga. App. 200, 201–02, 504 S.E.2d 38, 40 (1998), the Court of Appeals of Georgia affirmed the trial court's grant of a motion to enforce the settlement agreement under strikingly similar circumstances. Like the present case, the parties in *Superglass* engaged in extensive settlement negotiations.  *Superglass*, 233 Ga. App. at 200.  Like the present case, the parties in *Superglass* initially entered into an oral settlement agreement. *Id.* Like the present case, the parties in *Superglass* notified the Court that a settlement had been reached.[2] *Id.* at 201. Like the present case, the parties in *Superglass* notified the Court of the settlement prior to the creation or execution of the settlement documents memorializing the settlement.[3] *Id.*  Like the present case, the settlement documents in *Superglass* included the terms of the parties' settlement, as well as additional terms that the party opposing the enforcement of the settlement unilaterally inserted. *Id.* Like the present case, the party opposing the enforcement of the settlement agreement refused to complete the settlement if the new conditions were not accepted. *Id.*

Under these circumstances, the trial court found that the party seeking to enforce the settlement agreement was entitled to judgment as a matter of law. Under these circumstances, the

---

[2] The circumstances in this case weigh even more strongly in favor of the enforcement of the settlement agreement because, unlike Appellant, who affirmatively joined in the representation to the Court that the Parties had reached a settlement, the party opposing enforcement of the settlement in *Superglass* did not make any **_affirmative_** representations regarding the existence of the settlement to the Court. The Court of Appeals, however, noted the significance that counsel for the party opposing enforcement of the settlement was physically present in the courtroom when the announcement as to the settlement was made, and did not make any statement contradicting or objecting to the representation.

[3] The circumstances in this case weigh more strongly in favor of the enforcement of the settlement agreement because, unlike the June 27, 2017 email from Appellant, there was no writing confirming the settlement in *Superglass* prior to the announcement to the Court.

Georgia Court of Appeals affirmed the trial court's decision expressly rejecting, as a matter of law, the positon by party opposing the enforcement of the settlement that no settlement was consummated noting that counsel for the party opposing the enforcement of the settlement agreement "stated without reservation that the parties had agreed to the terms of their settlement." *Id.* at 202.   The Georgia Court of Appeals went further to call the denial of the settlement in opposition to the motion to enforce the settlement agreement "suspicious" in light of the prior representations by the counsel for the party opposing the enforcement of the settlement, but went on to hold that such "…denial that an agreement was reached is, however, immaterial where it is undisputed that the attorney for the party denying the agreement communicated acceptance of the settlement offer." *Id.*   The Georgia Court of Appeals went on to hold that any subsequent negotiations after settlement was reached were immaterial and could not destroy the prior agreement. *Id.* Accordingly, the Georgia Court of Appeals enforced the settlement between the parties without the terms that were unilaterally asserted by the party opposing the enforcement of the settlement. *Id.*

    In this case, the Parties admittedly reached a settlement agreement as reflected by the correspondence between counsel for the Parties, as well as the Parties express representations to this Court.   As detailed above, the Parties engaged in extensive settlement discussions which culminated with an offer from Appellant that was accepted by KPPOA on June 23, 2017.   Very simply, the Parties agreed that KPPOA would pay Appellant the sum of $100,000.00 in exchange for a full and complete settlement and resolution of the litigation between the Parties.   In particular, Appellant agreed to dismiss the present Appeal with prejudice, KPPOA agreed to dismiss the

15

Reformation Action with prejudice, and the Parties agreed to mutually release one another to bring an end to the present dispute between the Parties.[4]

The acceptance of and existence of the settlement was confirmed between the Parties **by Appellant** on June 27, 2017 where counsel for Appellant expressly stated in writing that "**[w]e have an agreement to settle for $100,000.**" *See* Exhibit A, at p. 3. The existence of the settlement was subsequently confirmed to the Court through the Joint Motion for Extension of Time to File Appellee Brief and Joint Status Reports filed by KPPOA **and Appellant** on June 27, 2017, September 29, 2017, and February 5, 2018, wherein the Parties expressly represented to the Court that the Parties reached a settlement of this matter. [Docket Nos. 28, 36, and 39]. The existence of the settlement was again confirmed by the First Proposed Settlement Documents that were prepared by Appellant and provided to KPPOA, which reflect the terms of the Parties settlement, with the exception of request for the vacatur of the Bankruptcy Court Order that Appellant sought to add as a new condition after the Parties had already agreed to the terms of the settlement and the failure to exclude the Allowed Scheduled Claims from the mutual release provision. Upon receipt of the First Proposed Settlement Documents, KPPOA minimally revised the First Proposed Settlement Documents by simply removing any reference to this new condition, and excluding the Allowed Scheduled Claims from the mutual release provision. The revisions by KPPOA were minimal because, with the exception of this new condition and minimal oversight, the First Proposed Settlement Documents accurately reflected the terms of the settlement that was consummated on June 23, 2017.

Notably, there is no dispute that the request for the vacatur of the Bankruptcy Court Order was a new condition that was requested by Appellant **after** the settlement had been reached.

---

[4] With unrelated claims being excluded from this release.

Counsel for Appellant acknowledged as much in his October 27, 2017 email to counsel for KPPOA. Exhibit A, at p. 68 ("[T]he vacatuer[sic] wasn't initially included … I have acknowledged as much."). There is likewise no dispute that the unrelated Allowed Scheduled Claims were to be excluded from the Parties release. Indeed, at no point has Appellant ever disputed that the Parties have reached a settlement. To the contrary, Appellant has confirmed that the Parties reached a settlement at every opportunity. The admitted settlement of this matter has not been completed, however, because Appellant now refuses to honor the terms of its settlement in apparent retribution for KPPOA's unwillingness to agree to the new condition related to the vacatur of the Bankruptcy Court's Order. Although Appellant has now withdrawn the request that KPPOA consent to the vacatur of the Bankruptcy Court's Order, Appellant now also refuses to provide KPPOA with a release of any kind related to the litigation or otherwise. But, the mutual release between the Parties was an original and material condition of the settlement, as reflected by its inclusion in the initial draft of the First Proposed Settlement Documents that were prepared by Appellant. Like the trial court and the Court of Appeals in *Superglass*, this Court should enforce the terms of the Parties settlement, which is reflected in the First Proposed Settlement Documents, as revised by KPPOA to remove any reference to the vacatur of the Bankruptcy Court Order (the documents found at Exhibit A, pp. 35-63), a term unilaterally (and admittedly, by Counsel for Appellant) added after the Parties had already reached an agreement on the terms of the settlement, and to properly exclude the Allowed Scheduled Claims from the mutual release provision.

## II.   THIS COURT SHOULD ENTER SANCTIONS AGAINST APPELLANT FOR ITS REFUSAL TO HONOR THE TERMS OF THE SETTLMENT AND FOR FORCING KPPOA TO FILE THIS MOTION TO ENFORCE.

Additionally, this Court should enter sanctions against the Appellant as a result of the Appellant's bad faith in refusing to fulfill its obligations under the Parties' settlement. This Court is

unquestionably vested with the authority to enter sanctions against a party. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991) ("it is firmly established that the power to punish for contempts is inherent in all courts.").  This Court's authority to enter sanctions against a party includes the authority to enter sanctions in connection with the enforcement of a settlement agreement. *See Fitzhugh*, 2017 WL 937965 at *1. In *Fitzhugh*, much like the present case, "the parties entered settlement negotiations" and ultimately, "through their counsel of record - settled Plaintiff's claims through email." *Id*. Like the present case, the parties in *Fitzhugh* began drafting formal settlement documents inclusive of a "formal written settlement agreement to be executed by both parties" after reaching the terms of the settlement. *Id*. However, "[d]uring the negotiation of this formal settlement agreement, Defendants' counsel attempted to insert an additional material term [a confidentiality provision] that had not been previously agreed to by Plaintiff…" and "Plaintiff's counsel refused to include this additional term." *Id*. Subsequently, "[d]efendants' counsel agreed to the terms of the formal written settlement agreement without this additional term." *Id*. Yet, when the defendants in *Fitzhugh* were directed to sign the settlement agreement, the plaintiff was informed that the defendants "were refusing to sign the settlement agreement without a confidentiality provision." *Id*. at *2. As a result of the defendant's refusal to sign the settlement agreement absent the inclusion of the confidentiality provision that was not a term of the original agreement, the plaintiff in *Fitzhugh* filed a motion to enforce the settlement agreement and for sanctions. *Id*. at *3.  As has occurred in this case, the *Fitzhugh* Court found that the defendants had acted in bad faith and that "the only reason for [d]efendants' refusal to execute these documents was to coerce Plaintiff to acquiesce to their attempts to renegotiate the terms of the otherwise finalized settlement agreement." *Id*. The *Fitzhugh* court ultimately granted the enforcement of the settlement agreement, as negotiated between the

parties, and awarded the plaintiff attorney's fees incurred in enforcing the settlement agreement. *Id.* at *4.

The Court's reasoning and justification for entering sanctions in *Fitzhugh* could not be more applicable to the present case. The Parties clearly entered into a settlement as reflected by the correspondence and the numerous affirmative representations to the Court.  The terms of the settlement are not in dispute.  Counsel for Appellant expressly acknowledged that the request to vacate the Bankruptcy Court Order was not an original term of the settlement. Exhibit A., p. 68. Instead, Appellant decided, **after** the settlement terms were agreed to, that it wanted to add this additional term.  Like the defendant in *Fitzhugh*, Appellant's unilateral desire to renegotiate the settlement is not a good faith basis to simply refuse to honor the terms of the original settlement. Yet, Appellant refuses to finalize the settlement as agreed because KPPOA will not agree to this new term.  Because KPPOA will not agree to this subsequent condition, Appellant has revised the proposed Settlement Documents to remove the release language between the Parties that was an essential and material term of the Parties settlement, further reflecting their bad faith and transparent intent to simply destroy the Parties' agreement.  Under the circumstances, KPPOA is entitled to not only an order enforcing the terms of the Parties' settlement, but also sanctions against Appellant in the form of an award of the attorneys' fees and expenses that KPPOA has incurred as a result of Appellant's refusal to honor the terms of the Parties' settlement or other relief the court deems appropriate.[5]

---

[5] To the extent the Court sustains KPPOA's Motion to Enforce the Settlement Agreement and determines that the circumstances in this case warrant the imposition of sanctions, then KPPOA hereby requests an evidentiary hearing, or leave of Court to file supporting affidavits, to present evidence of the current, up-to-date amount of fees and expenses incurred by KPPOA as a result of Appellant's refusal to honor the terms of the Parties' settlement

## **CONCLUSION**

WHEREFORE, having filed this Motion, KPPOA prays that the Court enforce the terms of the parties' settlement agreement, that the Court sanction Appellant by awarding KPPOA its attorneys' fees incurred in enforcing the parties' settlement agreement, and that the Court award KPPOA such other and further relief as the Court may deem just and proper.

Respectfully submitted this the 17th day of August, 2018.

ROBERTS TATE, LLC

*/s/ Jason M. Tate*
Jason M. Tate
Georgia Bar No. 140827
jtate@robertstate.com
P.O. Box 21828
St. Simons Island, Georgia 31522
(912) 638-5200
(912) 638-5300 – Fax

*-and-*

MCGUIREWOODS LLP
Thomas R. Walker
Georgia Bar No. 732755
1230 Peachtree Street, NE
Suite 2100
Atlanta, Georgia  30309
(404) 443-5705 [direct dial]
(404) 443-5763 [direct fax]
trwalker@mcguirewoods.com

***Co-Counsel for Kings Point Property Owners Association, Inc.***

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | | |
|---|---|---|
| ROBERT H. BARNETT, Liquidating | * | |
| Trustee of the Sea Island Company | * | |
| Creditors Liquidating Trust, | * | |
| | * | |
| Appellant, | * | |
| v. | * | 2:16-cv-046 |
| | * | |
| KINGS POINT PROPERTY OWNERS | * | |
| ASSOCIATION, INC., | * | |
| | * | |
| Appellee. | * | |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served all parties in this case with the foregoing MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR SANCTIONS AND SUPPORTING MEMORANDUM in accordance with the directive from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing.

Submitted this 17th day of August, 2018.

ROBERTS TATE, LLC

*/s/ Jason M. Tate*
Jason M. Tate
Georgia Bar No. 140827
jtate@robertstate.com