IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| ROBERT H. BARNETT, Liquidating | ) | |
| Trustee of the Sea Island Company | ) | |
| Creditors Liquidating Trust, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | 2:16-cv-046 |
| v. | ) | |
| | ) | |
| KINGS POINT PROPERTY OWNERS | ) | |
| ASSOCIATION, INC., | ) | |
| | ) | |
| Appellee. | ) | |

## LIQUIDATING TRUSTEE'S RESPONSE IN OPPOSITION TO KINGS POINT PROPERTY OWNERS ASSOCIATION'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR SANCTIONS

Robert H. Barnett, Liquidating Trustee of the Sea Island Company Creditors Liquidating Trust ("Liquidating Trustee"), hereby files this response in opposition to Kings Point Property Owners Association, Inc.'s ("KPPOA") Motion to Enforce the Settlement Agreement and for Sanctions and Supporting Memorandum (Dkt. 44, "Motion").

## INTRODUCTION

According to KPPOA, the parties consummated a purported settlement on June 23, 2017. Yet, KPPOA has waited over 14 months after such purported "consummation" and over a month and a half after the completion of briefing in this appeal to ask the Court to enforce the so-called settlement. In doing so, KPPOA also ignores its own admissions to the Court in a Joint Status Report filed on February 5, 2018 that the parties' settlement was *not* finalized, that certain terms "remain[ed] unresolved," and that the parties had "identified certain terms and required further discussion in order to finalize the settlement." Even in its Motion, KPPOA admits that the settlement has not been finalized by asserting on the very first page that "Appellant refuses to

finalize the terms of the settlement." These statements are binding judicial admissions and conclusively establish that there is no settlement. On that basis alone, KPPOA is not entitled to relief as a matter of law.

But this is not just a matter of procedure. The evidence demonstrates the parties have in fact been in a state of disagreement about various terms of a potential settlement for well over year. The disputed terms include not only material non-monetary terms, but also terms relating to the potential release of a related monetary claim asserted by Kings Point POA in the underlying bankruptcy action. Because there has been no meeting of the minds as to the material terms of any settlement, no enforceable settlement exists.

Finally, even if KPPOA were somehow not bound by its judicial admissions, and even if the evidence did not (as it does) plainly establish that there is no enforceable settlement, KPPOA's Motion should still be denied given that – absent approval by the United States Bankruptcy Court of the Southern District of Georgia ("Bankruptcy Court") – the purported settlement is not binding. For all these reasons, KPPOA's Motion should be denied.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

As set out in the Liquidating Trustee's opening brief on appeal, the present action arises from a Motion to Clarify Provisions Relating to the Implementation of the Confirmed Plan ("Motion to Clarify") seeking an order from the Bankruptcy Court clarifying the present ownership of the Kings Point Common Areas. (Dkt. 23). After a hearing on the Motion to Clarify, the Bankruptcy Court issued an Order holding that the Kings Point Common Areas did not vest in the Liquidation Trust pursuant to the governing bankruptcy documents ("Bankruptcy Court Order"), and the Liquidating Trust timely appealed. (Dkt. 23, p. 8).

By Order dated March 2, 2017, this Court established a briefing schedule for the present appeal. (Dkt. 22). On March 31, 2017, the Liquidating Trustee filed its opening appellate brief. (Dkt. 23). On or about April 3, 2017, the parties' counsel participated in a conference call, during which counsel for the Liquidating Trustee made a verbal offer to settle and resolve the appeal for $150,000.00 payable by KPPOA to the Liquidating Trustee. (Exhibit 1, Declaration of Paul G. Jennings ("Jennings Decl."), ¶ 4). Other proposed settlement terms were discussed at a high level, including the dismissal of a related reformation action,[1] resolution of this appeal, and the need for a complete walk-away settlement. (*Id.*) However, the focus of the conversation centered on the monetary settlement value, *i.e.*, payment by KPPOA to the Liquidating Trustee; the other potential terms were not the focus of the discussion. (*Id.*) On April 17, 2017, the parties filed a Joint Motion for Extension of Time to File Appellee Brief requesting that the Court extend the time for the parties to file the remaining appellate briefs for the purpose of allowing the parties "sufficient time" to explore settlement. (Dkt. 26). Thereafter, the parties continued to engage in ongoing discussions as to a potential monetary settlement amount.

On June 20, 2017, counsel for the Liquidating Trustee contacted counsel for KPPOA and verbally offered to settle the present appeal for $100,000.00 payable by KPPOA to the Liquidating Trustee. (Jennings Decl., ¶ 5). The monetary settlement amount was the only term discussed between counsel for the parties, while other outstanding settlement terms remained to be finalized. (*Id.*). On June 23, 2017, KPPOA verbally agreed that a $100,000.00 monetary payment to the Liquidating Trustee would be acceptable. (*Id.* ¶ 6). During the conversation, the parties also discussed certain other terms such as a dismissal of the reformation action, a mutual release of claims or a global, walk-away settlement, and the need to seek approval of the

---

[1] The reformation action refers to a related adversary proceeding in the Bankruptcy Court styled *Kings Point Prop. Owners Ass'n, Inc. v. Sea Island Co.*, Case No. 16-02015 seeking the reformation of the defective deed for the Kings Point Common Areas. (*See* Dkt. 23, pp. 5-6).

3

settlement from the Bankruptcy Court.  (*Id.*).  However, the parties did not discuss, nor purport to address, every term that would be included in the settlement.  (*Id.*).

Although KPPOA now claims that parties' verbal discussion on June 23, 2017 "consummated" the settlement between the parties, (Dkt. 44, p. 5), the facts demonstrate that the parties continued to attempt to negotiate material terms of a settlement for several months thereafter.  On June 27, 2017, counsel for the Liquidating Trustee sent an email confirming (1) the monetary settlement amount, (2) the need to seek approval of the settlement from the Bankruptcy Court through a Rule 9019 motion, and (3) the parties' intent to finalize the settlement in writing.  (Dkt. 44-1, p. 3).  The email states in pertinent part: "We have an agreement to settle for $100,000. We will need to file a Rule 9019 motion to get the settlement blessed by the bankruptcy court. We will take a shot at that motion and an agreement and get a draft to you."  (*Id.*).  At no point did counsel for KPPOA respond to the email stating that it failed to confirm what the parties had actually discussed.  (Jennings Decl., ¶ 7).  That same day (June 27, 2017), the parties filed another Joint Motion for Extension of Time to File Appellee Brief requesting that the Court again extend the outstanding briefing schedule given the upcoming deadline.  (Dkt. 28, p. 2).  In that filing, the parties also advised the Court that the parties' purported "settlement" would be "subject to the approval of the Bankruptcy Court." (*Id.*)

On August 31, 2017, the Liquidating Trustee sent KPPOA an initial draft of settlement documents ("Liquidating Trustee's First Proposed Settlement Documents"), which set out a full recitation of the monetary and non-monetary settlement terms that would be acceptable to the Liquidating Trustee.  (Dkt. 44-1, pp. 5-34).  Among other terms, the Liquidating Trustee's First Proposed Settlement Documents provided for vacatur of the Bankruptcy Court Order giving rise

to the appeal.  (*Id.* at 4).  This draft of the settlement agreement also included terms providing for the dismissal of the underlying appeal, a stipulation of dismissal of the reformation action, and a broad mutual release.  (*Id.* at 5-12).  The Liquidating Trustee's First Proposed Settlement Documents did not exclude any claims by either party – including KPPOA's "Allowed Scheduled Claims"[2] – from the mutual release provision, nor had any such exclusion ever been discussed by the parties at that point.  (Jennings Decl., ¶¶ 10-11).

On September 27, 2017, counsel for KPPOA sent a redlined draft of the settlement documents ("KPPOA's First Proposed Settlement Documents") to the Liquidating Trustee. (Dkt. 44-1, pp. 35-63).  KPPOA's First Proposed Settlement Documents contained at least two significant revisions to material, non-monetary settlement terms.  First, KPPOA added, for the first time, a provision excluding the Allowed Scheduled Claims from the mutual release.  (*See id.* at 35-36, 44).  Second, KPPOA removed the vacatur provision in its entirety.  (*See id.* at 35-63). Notably, in the transmittal email attaching KPPOA's First Proposed Settlement Documents, counsel for Kings Point POA stated:

> I have a call into Tom to ask him a bankruptcy related question about the release – it is my recollection that KPPOA filed an unrelated proof of claim in the bankruptcy case for pre-petition HOA assessments owed by some or all of the Debtors (this was beyond the scope of my involvement in this case).  I need to ensure that this is not covered by the release language that you proposed.  Other than any changes that may be required to ensure that this unrelated claim is not released, I think we are good to go.
>
> Regarding the deadline this Friday, I think it would be best if we could get the Motion to Approve filed before then so that we can simply file a Joint Notice informing the District Court that all the necessary documentation to complete the settlement has been filed and that we are simply waiting on the objection period to pass for the settlement to become final.

---

[2] The "Allowed Scheduled Claims" concern scheduled claims filed by KPPOA in the underlying bankruptcy case for non-payment of HOA assessments. If allowed, Kings Point POA would receive a monetary distribution from the Liquidation Trust on account of these claims.

(Dkt. 44-1, p. 35).  On September 29, 2017, the parties filed a Joint Status Report with the Court stating the parties were in the process of finalizing settlement documents.[3]  (Dkt. 36, p.1).

Thereafter, the parties continued to negotiate the material settlement terms.  In email correspondence dated October 16, 2017, counsel for the Liquidating Trustee informed counsel for KPPOA that KPPOA's deletion of the vacatur condition presented a serious issue. (Dkt. 44-1, p. 64).  According to KPPOA, it could not agree to the vacatur term because its title company had agreed to issue a title insurance policy with the Bankruptcy Court Order in place.  (*Id.* at 68-71).  This admission raised new issues as to how the underlying litigation would be resolved as part of the settlement.

On November 21, 2017, the Liquidating Trustee provided new proposed settlement documents ("Liquidating Trustee's Second Proposed Settlement Documents"), which, in effort to address the recently identified issue with KPPOA's title company, included a modified vacatur term limiting the vacatur to real property outside of the KPPOA Common Areas. (Dkt. 44-1, pp. 72-97).  KPPOA responded with a revised agreement on November 27, 2017 ("KPPOA's Second Proposed Settlement Documents").  (Dkt. 44-1, pp. 98-126).  KPPOA's Second Proposed Settlement Documents again modified the vacatur term, this time to include specific language that the Bankruptcy Court Order remained valid as to KPPOA.  (*Id.* at 104).

On November 28, 2017, the Liquidating Trustee provided a newly revised draft settlement agreement ("Liquidating Trustee's Third Proposed Settlement Documents"), which removed both the vacatur provision and the mutual release provision in their entirety.  (Dkt. 44-1, pp. 127-37).  KPPOA immediately objected to this draft agreement, and the next day the Liquidating Trustee provided a new draft settlement agreement ("Liquidating Trustee's Fourth

---

[3]  The parties repeated their earlier statement that they "have reached a settlement of this appeal."  (*Id.*)  But the status report is internally contradictory: the parties state that they "believe in good faith that they will be in a position to have the settlement finalized and documented within the next thirty days . . . ."  (*Id.*)

Proposed Settlement Documents").  (Dkt. 44-1, pp. 138-46).  The Liquidating Trustee's Fourth Proposed Settlement Documents were identical to the Liquidating Trustee's Third Proposed Settlement Documents except for the addition of Paragraph 4, which proposed that the Liquidating Trustee would agree not to contest KPPOA's ownership of the Common Areas.  (*Id.* at 141).  The same day, KPPOA provided suggested revisions to Paragraph 4, which the Liquidating Trustee rejected.  (Dkt. 44-1, pp. 147-57).

Thereafter, in December 2017, counsel for the parties continued to negotiate and discuss possible ways to reach a settlement.[4]  Counsel for KPPOA suggested changes to the settlement agreement which provided protection for rights that KPPOA might have in the reformation action, but these changes were not acceptable to the Liquidating Trustee.  (Jennings Decl., ¶¶ 13-14 & Appendix A).  Counsel for KPPOA also suggested that the Liquidating Trustee deliver a quitclaim deed to KPPOA along with a revised settlement agreement.  (*Id.*).  As a result of this suggestion, the parties considered and worked on a new proposed settlement that would incorporate delivery of a quitclaim deed from the Liquidating Trustee for many weeks.  (*Id.*).  Ultimately, the parties were unable to reach an agreement on that basis, and the final settlement communication between the parties occurred on or around May 10, 2018.  (*Id.*).

During this continuation of settlement discussion and suggestions, on February 5, 2018, the parties filed a final Joint Status Report with the Court, which informed the Court that the parties were still negotiating certain material, non-monetary terms.  (Dkt. 39, p. 1).  The Joint Status Report was signed by both parties and states in pertinent part:

> The parties previously reported to the Court that the Parties had reached a settlement of this appeal, had exchanged drafts of a settlement agreement, and were in the process of

---

[4] KPPOA fails to include any correspondence between the parties after November 29, 2017 in the exhibits to its Motion. However, as evidenced by the email correspondence included in Appendix 1 to the Declaration of Paul Jennings, the parties continued to negotiate as to material terms after November 2017.  (Jennings Decl., ¶¶ 13-14 & Appendix A).

4828-5007-4481, v. 1

> working to finalize the settlement documents. ***During the process of documenting the settlement, the Parties identified certain terms that required further discussion in order to finalize the settlement***. While these terms ***remain unresolved***, the Parties are continuing to work diligently to try to bring this matter to a close. Furthermore, ***over the time period during which the parties have been attempting to finalize the settlement***, the Trustee has sought and received Bankruptcy Court approval to extend the duration of the Liquidation Trust to December 16, 2019 from its previous expiration date of December 16, 2017.[5]

(*Id.* (emphasis added)).

After settlement negotiations concluded, KPPOA proceeded to fully participate in the underlying appeal by filing its Appellee's Brief on June 11, 2018. (Dkt. 42). The Liquidating Trustee filed a reply brief on July 2, 2018, thereby completing the briefing on the appeal. (Dkt. 43). On August 17, 2018, over a month and a half ***after*** the parties completed briefing on the appeal, KPPOA filed its Motion seeking to enforce a purported "settlement" it claims that the parties consummated more than a year earlier, in June 2017. (Dkt. 44).

## STANDARD OF REVIEW

A motion to enforce a settlement agreement is properly analyzed using the same framework as a motion for summary judgment. *Lexington Nat'l Bail Servs., Inc. v. Spence*, 2007 WL 951767, at *3 (N.D. Ga. Mar. 28, 2007). The party seeking enforcement of a settlement bears the burden of demonstrating the absence of a genuine dispute as to any material fact as to the "existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial." *Id.* at *4-5 (citing *Celotex Corp. v. Catrett,* 411 U.S. 317, 322 (1986)) (emphasis in original).[6] When making a determination as to a genuine dispute as to any material fact, courts view the evidence in the light most favorable to non-moving party. *See, e.g.*, *Cohen v. DeKalb Cty. Sch. Dist.*, 2009 WL 4261161, at *4 (N.D. Ga. Nov. 25, 2009). As a result,

---

[5] Notably, KPPOA only selectively quotes from the Joint Status Report, omitting any reference to ongoing settlement negotiations. (*See* Dkt. 44, p. 5).
[6] The same is true under Georgia law. *Stephens v. Castano-Castano*, 814 S.E.2d 434, 437 (Ga. Ct. App. 2018).

courts "must draw all disputed factual inferences in the light most favorable to the non-moving party." *Id*.

In federal court, the "construction of settlement contracts is governed by state law applicable to contracts in general." *Blum v. Morgan Guar. Tr. Co. of N.Y.*, 709 F.2d 1463, 1467 (11th Cir. 1983) (applying Georgia law). "Under Georgia law, an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requirements of formation and enforceability as any other contract." *Id.* It is well settled that contract formation only occurs when "minds of the parties meet at the same time, upon the same subject, and in the same sense." *See Cohen*, 2009 WL 4261161, at *4 (denying motion to enforce settlement agreement). A "response to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer." *Id.* As a result, no valid settlement agreement "exists until the contracting parties have agreed on all essential terms."[7] *Lexington Nat'l Bail Servs.,* 2007 WL 951767, at *4-5.

## ARGUMENT

KPPOA cannot meet its burden of establishing an absence of disputed material facts so as to prevail on its Motion. To the contrary, the evidence in this matter demonstrates that the parties disagree as to whether a settlement was reached at all – let alone to the terms of any purported settlement. This dispute of material facts concerning the existence and terms of any purported agreement, in itself, precludes entry in KPPOA's favor. *See, e.g., Cohen*, 2009 WL 4261161 at *4. In addition, KPPOA simply cannot prove that the parties at any point entered

---

[7] Thus, parties have not settled a dispute – and courts will not enforce a purported settlement – where the parties have not finalized the settlement. *See, e.g., Brooks v. Ironstone Bank*, 726 S.E.2d 419, 420 (Ga. Ct. App. 2012) (reversing grant of petition to enforce the settlement agreement given "issues of fact as to the existence of a finalized settlement"); *In the Estate of Huff*, 652 S.E.2d 203, 206 (Ga. Ct. App. 2007) (affirming probate court's denial of motion to enforce settlement agreement evidence supported the "probate court's determination that the settlement agreement was not finalized").

9

into an enforceable settlement agreement concerning all essential terms. *See, e.g.*, *Blum*, 709 F.2d at 1467.  KPPOA's self-serving arguments to the contrary are disingenuous.  Indeed, in requesting that the Court to find the existence of an enforceable settlement, KPPOA asks the Court to disregard certain material terms it dislikes on the basis that these terms were not discussed on or before June 23, 2017, while simultaneously asking the Court to enforce other subsequently added terms that operate in KPPOA's favor.  KPPOA's Motion should be denied in its entirety and this appeal should move forward to be decided on its merits.

## I.   KPPOA's Motion Should Be Denied Because Material Facts Are in Dispute.

At the outset, KPPOA's Motion should be denied because the parties clearly dispute certain material facts as to the formation and essential terms of any purported settlement agreement.  Applying a summary judgment standard, the mere existence of these disputes is sufficient to defeat KPPOA's Motion. *See, e.g.*, *Cohen*, 2009 WL 4261161, at *4.

Construing all facts in favor of the Liquidating Trustee, it is clear that the parties dispute, at a minimum: (1) whether the parties entered into an enforceable settlement agreement; (2) whether and to what extent any purported settlement agreement includes a vacatur term; and (3) whether and to what extent any purported settlement agreement includes a mutual release that excludes the Allowed Scheduled Claims and thus is not a walk-away settlement.  In short, the parties disagree not only as to whether any enforceable settlement agreement actually exists, but as to the entire structure and terms of any purported settlement agreement outside of the $100,000.00 monetary payment.

The evolution of the draft settlement agreement best illustrates the outstanding questions of fact that preclude judgment in KPPOA's favor.  The parties' first attempted to finalize non-monetary settlement terms in the Liquidating Trustee's First Proposed Settlement Documents,

which contained the initial draft of a settlement agreement. (Dkt. 44-1, pp. 5-12). The Liquidating Trustee's First Proposed Settlement Documents provided for vacatur of the Bankruptcy Court Order on the Motion to Clarify at issue in the underlying appeal and for a broad mutual release of claims by the parties. (*Id.*). On September 27, 2017, KPPOA provided the Liquidating Trustee with a redline of the draft agreement in which KPPOA (1) removed the vacatur term and (2) added a carve-out of the Allowed Scheduled Claims from the mutual release provision. (*Id.* at 35-63). The parties thereafter continued to negotiate over these and other terms through multiple iterations of draft settlement agreements. The last draft settlement agreement – the Liquidating Trustee's Fourth Proposed Settlement Documents – was circulated on November 29, 2017 and did not include any vacatur or mutual release terms. (*Id.* at 138-46). These changes were not acceptable to KPPOA. Settlement discussions continued well into 2018, when KPPOA proposed a new term providing for delivery of a quitclaim deed – another term not previously discussed. (*See* Jennings Decl., ¶¶ 13-14 & Appendix A). These ongoing settlement discussions demonstrate that there simply was no final settlement and that the parties instead were still trying to come to mutually acceptable terms.

Ignoring the months in which KPPOA actively engaged the Liquidating Trustee in settlement negotiations that culminated in the Liquidating Trustee's Fourth Proposed Settlement Documents, KPPOA now baldly asserts that KPPOA's First Proposed Settlement Documents, circulated on September 27, 2017, reflect a meeting of the minds and are enforceable. (Dkt. 44, p. 11). The Liquidating Trustee disputes this assertion, and maintains that the evidence – including the parties' email exchanges showing continued negotiations, and the very existence of the multiple additional iterations of the settlement documents – demonstrates that the parties never entered into an enforceable settlement agreement. Applying a summary judgment standard

4828-5007-4481, v. 1

and construing the facts in a light most favorable to the Liquidating Trustee, these disputed facts alone are sufficient to defeat KPPOA's Motion. *See, e.g.*, *Lexington Nat. Bail Servs.,* 2007 WL 951767, at *3.

## II.  **The Parties Did Not Reach a Meeting of the Minds as to Material Settlement Terms.**

### A.  *Settlement Agreements Are Enforceable under Georgia Law only if the Parties Reach an Agreement as to all Essential Terms.*

"Under Georgia law, an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract." *Tekin v. Whiddon*, 504 S.E.2d 722, 725 (Ga. Ct. App. 1998) (internal citations omitted).  "A meeting of the minds is the first requirement of the law relative to contracts." *Id.* "(I)f there was in fact any essential part of the contract upon which the minds of the parties had not met, or upon which there was not an agreement it must follow that a valid and binding contract was not made." *Id.* (alteration in original).  "Agreements to agree" to essential terms are not enforceable under Georgia law. *See, e.g.*, *Lexington Nat'l Bail Servs.,* 2007 WL 951767, at *5.[8]

In Georgia, lawyers may bind their clients to a settlement, but they must do so "in writing." *See* Ga. Code Ann. § 15-19-5.  Accordingly, oral agreements to settle are enforceable under Georgia law only if they are "full and complete, cover[]all issues, and [are] understood by all litigants concerned." *Cross v. Cook*, 250 S.E.2d 28, 28–29 (Ga. Ct. App. 1978).  "An oral compromise, where denied by one of the parties, creates an issue of fact, and it will not be adopted by the court unless it appears that the terms were understood and agreed to by those concerned." *Id.*  In the case of a purported settlement agreement "where there is a dispute as to

---

[8] *See also Pean v. Spelman Coll.*, 2013 WL 12101063, at *2 (N.D. Ga. May 23, 2013) ("If, in negotiating a contract, two parties execute a written document that leaves some essential term to be determined in the future, they have not at the time of the document's execution agreed to all the essential terms of their agreement. Instead of entering into an enforceable contract, the parties in such a case have reached only an 'agreement to agree' at some later date.").

12

terms, the agreement must be in writing. . . . This requirement of a writing goes to the certainty that an agreement exists and to the certainty of the terms of the agreement . . . ." *Tekin*, 504 S.E.2d at 724.  Furthermore, "[t]he writing which will satisfy this requirement ideally consists of a formal written agreement signed by the parties. However, letters or documents prepared by attorneys which memorialize the terms of the agreement reached will suffice." *Id.*

Courts applying Georgia law have repeatedly denied motions to enforce settlement agreements under similar facts to the case at bar.  For example, in *Tom James Co. v. Morgan*, 2005 WL 8154299 (N.D. Ga. Mar. 8, 2005), the United States District Court for the Northern District of Georgia denied the plaintiff's attempt to enforce a settlement agreement when the parties had reached a substantial settlement at mediation, but had failed to reach definitive agreements as to other essential terms.  *Id.* at *3.  At mediation, the parties had specifically agreed (1) to a monetary settlement value to be paid in installments, (2) that the defendant would request to have his counterclaims dismissed with prejudice, and (3) that "[o]ther provisions would follow similar settlements reached in other cases." *Id.*  The defendant's attorney subsequently sent a confirmatory letter to plaintiff's counsel reiterating that the parties had reached a settlement, and counsel for the parties exchanged several drafts of settlement agreements negotiating various other terms not discussed during the mediation.  *Id.* at *2. Thereafter, the plaintiff moved to enforce the settlement agreement that it claimed the parties had reached at mediation.  *Id.* at *1.  In response, the defendant's attorney argued that the parties had intended that the settlement would not be final until the parties agreed to a written settlement agreement, and that the draft agreements circulated during settlement negotiations included essential terms not discussed, or agreed upon, during the mediation. *Id.* at *2.

13

In denying the *Tom James* plaintiff's motion to enforce, the court held that the parties "may have reached an agreement in principal" at mediation; however, "no written document was signed on that day," and the parties evidently possessed conflicting understandings as to whether the agreement was finalized or would only be final upon a signed writing. *Id.* at *3. The court further held that the letter from defendant's counsel confirming that the parties had reached a settlement did not create a binding agreement because it clearly indicated that the parties were still in the "process of finalizing the settlement papers." *Id.* Finally, the court found that the "back and forth discussions" concerning various material terms of the settlement did not create a binding agreement because there was no meeting of the minds. *Id.*

The *Tom James* holding is consistent with other opinions in which courts have denied motions to enforce settlement agreements under Georgia law when parties have failed to reach an agreement as to material terms.[9] *See, e.g.*, *Pean*, 2013 WL 12101063, at *2 (denying motion to enforce settlement agreement when settlement discussions broke down as a result of a newly added term based on the established principle that agreements to agree are not enforceable); *Graco Children's Prod. Inc. v. Kids II, Inc.*, 2013 WL 12062269, at *4 (N.D. Ga. June 3, 2013)

---

[9] These cases are directly on point, and are plainly distinguishable from cases in which this Court has granted a motion to enforce a settlement agreement, such as *Superglass Windshield Repair, Inc. v. Mitchell*, 504 S.E.2d 38 (Ga. Ct. App. 1998) and *FitzHugh v. AB McDonoughs, Inc.*, 2017 WL 937965 (S.D. Ga. Mar. 9, 2017). In *Superglass*, the court upheld the grant of a motion to enforce a settlement agreement after one party sent a revised settlement agreement to the opposing party, accompanied by a letter confirming that the parties had agreed to a settlement and listing 10 essential terms regarding the same. *Superglass*, 504 S.E.2d at 40. The opposing party responded that he accepted the terms revised draft settlement agreement with respect to the 10 essential terms, but rejected any additional terms added by the drafting party. *Id.* Here, the Liquidating Trustee's First Proposed Settlement Documents represented the first time that either of the parties fully attempted to enumerate all of the proposed terms of settlement. KPPOA expressly rejected one of the Liquidating Trustee's material terms (vacatur), and added its own material term (excluding release of the Allowed Scheduled Claims), and the Liquidating Trustee never expressed that the parties had reached an agreement regarding these revised terms.

In *Fitzhugh*, the motion to enforce the settlement was not contested, and thus was considered unopposed. *Fitzhugh*, 2017 WL 937965, at *2. Further, the *Fitzhugh* plaintiff signed a "formal written settlement agreement" and delivered it to the defendant whose counsel agreed to such agreement on a date certain. *Id.* No such facts are present here. By contrast, in the present case, the parties continued to negotiate material terms for months following June 23, 2017 (*i.e.*, the date KPPOA claims the settlement was "consummated"). The parties never reached an affirmative agreement as to how to address issues like vacatur, delivery of a quitclaim deed, and mutual release.

(denying defendant's motion to enforce settlement agreement even though parties had agreed to monetary payment because parties could not agree as to two material, non-monetary terms); *S. Mills, Inc. v. Polartec, LLC*, 2012 WL 12932636, at *4 (N.D. Ga. Apr. 12, 2012) (denying motion to enforce settlement agreement when defendant's attorney had sent email confirming willingness to enter settlement agreement on certain terms because at the time of the email, "both parties believed … that a written document would be required before settlement had been finalized" and the wording of the email was open to either party's interpretation); *Lexington Nat'l Bail Servs.,* 2007 WL 951767, at *4-6 (denying motion to enforce settlement agreement when parties agreed to monetary settlement amount and had already reported settlement to the court because parties failed to reach an agreement as to a material, non-monetary term).  These cases demonstrate that Georgia law strongly disfavors motions to enforce settlement agreements when parties have failed to reach an agreement as to essential terms.

B. <u>The Facts Demonstrate that the Parties did not Reach an Enforceable Settlement.</u>

The facts of this case demonstrate that the parties did not enter into an enforceable oral or written settlement agreement and that KPPOA's Motion should be denied accordingly.

1. *There Is no Oral Settlement Agreement.*

At the outset, KPPOA is asking the Court to enforce an oral settlement agreement that does not, in any way, contain the definiteness required under Georgia law.  KPPOA argues that "the settlement agreement in this case was consummated on June 23, 2017," (Dkt. 44, p. 5), *i.e.*, the date that KPPOA verbally agreed to the Liquidating Trustee's monetary settlement offer. (Jennings Decl., ¶ 6).  The Liquidating Trustee disputes that any enforceable agreement was reached based on this conversation, and further disputes that the parties reached an agreement during that conversation as to all essential terms of a settlement agreement.  The Liquidating

15

Trustee's objection to KPPOA's attempt to enforce an oral settlement agreement creates an issue of fact that singlehandedly defeats KPPOA's Motion. *See, e.g.*, *Cross*, 250 S.E.2d at 28-29.

In an effort to disguise the fact that KPPOA is requesting enforcement of an oral agreement, KPPOA asks the Court to enforce KPPOA's First Proposed Settlement Documents, which contains KPPOA's unilateral changes to the initial draft settlement agreement proposed by the Liquidating Trustee.[10]  (Dkt. 44, p. 11).    However, KPPOA never explains how – nor presents any evidence indicating that – KPPOA's First Proposed Settlement Documents actually evinces a meeting of the minds between the parties.  Instead, KPPOA in effect contends that KPPOA's First Proposed Settlement Documents reflect the terms of the June 23, 2017 agreement *as KPPOA understood it*.  In short, KPPOA asks the Court to enforce the "terms" of the June 23, 2017 conversation as amenable to KPPOA – *i.e.*, to enforce an oral agreement requiring a payment of $100,000.00 and to insert KPPOA's preferred terms to make up the remainder of the parties' agreement.   (*Id.*). This is nothing more than a transparent attempt to circumvent established Georgia precedent prohibiting the enforcement of an oral settlement unless parties are in agreement as to the existence of the agreement and all material terms thereunder. Georgia law clearly does not permit this result. *See, e.g.*, *Cross*, 250 S.E.2d at 28-29.

> ### 2.  *The Parties Did not Enter into an Enforceable Written Settlement Agreement.*

Nor did the parties enter into an enforceable written settlement agreement.  Although KPPOA admits that the "proponent of the settlement, must establish its existence in *writing*,"[11] *Tekin*, 504 S.E.2d at 724 (emphasis added), it nonetheless attempts to rely on numerous

---

[10] In fact, despite arguing that the parties verbally consummated the purported settlement on June 23, 2017, KPPOA goes so far as to admit that any settlement agreement in this matter must be established in writing because the existence of the agreement itself is in dispute.  (*Id.* at 13).

[11] (*See* Dkt. 44, p. 13 ("[W]here the very existence of the [settlement] agreement is dispute, it may only be established by a writing.") (*quoting Scott v. Carter*, 521 S.E.2d 835 (Ga. Ct. App. 1999))).

conversations to prove that there was a settlement.  (*Compare* Dkt. 44, pp. 5-11, *with Grossman v. Smith, Barney Real Estate Fund*, 438 S.E.2d 700, 703 (Ga. Ct. App. 1993) (reversing trial court and analyzing numerous letters and concluding that such "correspondence does not establish that the parties had reached an agreement regarding the easement to be granted under the settlement agreement")).[12]

The parties indisputably intended to enter into a written settlement agreement that would memorialize the terms of any ultimate agreement.  (*See* Dkt. 44-1, p. 3). *See also Tom James*, 2005 WL 8154299, at \*3 (holding no binding agreement existed when parties were clearly in the "process of finalizing the settlement papers").  Georgia law is clear that "agreements to agree" are not enforceable. *See, e.g.*, *Tom James*, 2005 WL 8154299, at \*3.  Here, the parties' continued negotiations over material terms such as vacatur and the scope of any mutual release demonstrate that the parties had, at most, an "agreement to agree," and that the parties had not reached a meeting of the minds as to material terms.

The ongoing nature of the parties' negotiations was reflected not only in the multiple draft settlement agreements circulated between the parties, but also in KPPOA's own representations to the Court.  For instance, while KPPOA places significant weight on the parties' Joint Status Reports to the Court, the Parties Joint Status Reports in fact confirm that there was no final settlement.  *See, e.g.*, *Lexington Nat'l Bail Servs.,* 2007 WL 951767, at \*4-6. In particular, in the February 5, 2018 Joint Status Report – which was the last in time to be filed with the Court, and which was signed by KPPOA – the parties expressly and jointly

---

[12]   When it has granted motions to enforce settlements, the Court does not rely merely on conversations between counsel as KPPOA requests.  *See, e.g.*, *FitzHugh*, 2017 WL 937965, at \*2 (granting a motion to enforce a settlement agreement when the plaintiff signed a "formal written settlement agreement" and delivered it to the defendant whose counsel agreed to such agreement on a date certain.); *Great Lakes Reinsurance (UK) PLC v. Daffuse*, 2013 WL 12180611, \*3 (S.D. Ga. May 15, 2013) (D.J., Hall) (holding that "[t]he terms of the agreement are evidenced by the written Settlement Agreement and Mutual Release that was signed by Plaintiff and approved by" defendant's former counsel.)

acknowledged that there were terms that "remain[ed] unresolved" and that the parties had been unable to finalize a settlement:

> The parties previously reported to the Court that the Parties had reached a settlement of this appeal, had exchanged drafts of a settlement agreement, and were in the process of working to finalize the settlement documents. ***During the process of documenting the settlement, the Parties identified certain terms that required further discussion in order to finalize the settlement***. While these terms **remain unresolved**, the Parties are continuing to work diligently to try to bring this matter to a close. Furthermore, ***over the time period during which the parties have been attempting to finalize the settlement***, the Trustee has sought and received Bankruptcy Court approval to extend the duration of the Liquidation Trust to December 16, 2019 from its previous expiration date of December 16, 2017.[13]

(Dkt. 39, p. 1 (emphasis added)).

This final status report to the Court – combined with the ongoing negotiations between the parties that occurred after this status report was filed – demonstrate conclusively that there was simply no enforceable settlement agreement.

KPPOA also openly admits that the mutual release issue (allowance of a claim to receive distribution) remains outstanding, and requests that the Court go so far as to fill in KPPOA's preferred contract language as to this point. (*See* Dkt. 44, p. 11). And, as to the clearly disputed vacatur term, KPPOA's only response is to argue that the issue was not raised in the parties' initial settlement discussions when the parties were finalizing monetary settlement terms. (*Id.* at 8). However, it is clear that both parties intended for the settlement agreement to be reduced to writing, and vacatur was the ***very first term*** in the ***very first draft settlement agreement*** circulated by counsel for the Liquidating Trustee to KPPOA. The term was clearly material for the Liquidating Trustee, and to KPPOA, as the parties spent months negotiating the vacatur term before settlement negotiations stalled completely, and KPPOA admits that the requested vacatur could directly impact its ability to secure insurable title to the Common Areas. (*Id.* at 9).

---

[13] Notably, KPPOA only selectively quotes from the Joint Status Report, omitting any reference to ongoing settlement negotiations. (*See* Dkt. 44, p. 5).

Furthermore, the specific mutual release provision that KPPOA now claims "represent[s] the settlement terms agreed upon by the Parties" – *i.e.*, which excludes the Allowed Scheduled Claims from any mutual release – was not specifically discussed during the parties' initial monetary settlement negotiations, ***just like vacatur***.  (Dkt. 44, p. 11; Jennings Decl., ¶¶ 10-11). KPPOA's counsel first raised the issue of the need to exclude the Allowed Scheduled Claims in his September 27, 2017 email transmitting KPPOA's First Proposed Settlement Documents, the same set of documents that KPPOA now claims is somehow enforceable.  (Jennings Decl., ¶¶ 10-11).  KPPOA tries to conceal this issue in its Motion, repeating that the Liquidating Trustee never specifically objected to the exclusion of the Allowed Scheduled Claims on the basis that this was a newly added term.[14]  (*See, e.g.*, Dkt. 44, p. 9). This argument is irrelevant as a matter of law, and highlights the disingenuous nature of KPPOA's entire Motion.

Put simply, KPPOA cannot have it both ways on the outstanding material questions of vacatur and mutual release or claim reservation.  If the parties reached a purported settlement agreement on June 23, 2017, as KPPOA argues, then the mutual release excluding the Allowed Scheduled Claims is a "new term" first inserted by KPPOA in KPPOA's First Proposed Settlement Documents transmitted on September 27, 2017.  According to KPPOA's own Motion, this newly added term is unenforceable and must be excluded from any purported settlement agreement.  (*See, e.g.*, *id.* at 8, 12, 16). In seeking to enforce the mutual release excluding the Allowed Scheduled Claims, KPPOA has undermined its own argument that the parties reached an immutable settlement as to all material terms on June 23, 2017.

---

[14] Additional terms arise in contract negotiations – including settlement negotiations – as a matter of course. Under KPPOA's interpretation of contract formation under Georgia law, parties would never be allowed to negotiate additional settlement deal points after agreeing to a monetary settlement amount.  This is not an accurate reflection of the law of contract formation in Georgia, nor does it reflect the reality of how most settlements are negotiated and consummated.

Irrespective of the foregoing evidence, and ignoring the hypocrisy of its own arguments, KPPOA remarkably, and disingenuously, asks the Court to overlook months of ongoing settlement negotiations and to enforce KPPOA's First Proposed Settlement Documents. (*Id.* at 11). A marked up copy of a settlement agreement that includes (1) one party's requested revisions and (2) material new terms is, without question, not an agreement at all. The Court should reject KPPOA's argument that the parties reached an enforceable settlement agreement based on the overwhelming weight of evidence to the contrary.

### 3. *Any Purported Settlement Agreement Would Require 9019 Approval.*

Mr. Tate's own affidavit acknowledges that approval by the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure is a condition precedent to any settlement. (Dkt. 44-2, ¶ 23). Such condition precedent is hardly surprising given that parties are deemed to contract with an understanding of the relevant law. *See Hardman v. Hardman*, 763 S.E.2d 861, 866 (Ga. 2014) (ruling against custodial parent seeking to have other parent pay for private school tuition given presumption—in the absence of explicit agreement to the contrary—that custodial parent pay for such expenses); *Freeman v. Decatur Loan & Fin. Corp.*, 231 S.E.2d 409, 411 (Ga. Ct. App. 1976) ("[B]oth the lender and the borrower here must be charged with knowledge of the statute limits the after-acquired clause without the necessity of spelling out the law into the document.").

Rule 9019(a) states that "[o]n motion **by the trustee** and after notice and a hearing, the court may approve a compromise or settlement." *See* Fed. R. Bankr. P. 9019(a) (emphasis added). Specifically, the use of the phrase "by the trustee" in Rule 9019(a) makes it clear and unambiguous that only a trustee has the right to file such a motion, *In re Smart World Techs., LLC*, 423 F.3d 166, 174 (2d Cir. 2005) ("We begin with the language of Rule 9019, which

authorizes only the trustee . . . to bring a motion for settlement."), which the trustee brings such a motion in its role as a fiduciary, *see  In re Tarrant*, 349 B.R. 870, 874-75, 893 (Bankr. N.D. Ala. 2006) (reasoning that only a trustee may move for court approval given the serious fiduciary responsibilities of a trustee that include the authority and responsibility to control the resolution of claims involving the estate).  Here, the trust agreement – which is binding on the parties, *see In re Sea Island Co.*, No. 10-21034, 2012 WL 1499489, *8 (Bankr. S.D. Ga. April 10, 2012) (B.J., Dalis) (terms of the trust agreement are binding) – requires the Liquidation Trustee to obtain the approval of the Bankruptcy Court. *See* Trust Agreement for Sea Island Company Liquidation Trust [Doc. No. 449-1], § 4.6.2.

Given that the Liquidating Trustee has not filed a Rule 9019 motion to secure approval of any purported settlement, even if – for the sake of argument – the un-finalized "settlement" were somehow otherwise binding, KPPOA is not entitled to relief as a matter of law because, without approval, any purported "settlement" has "no effect."  *Am. Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1024 (8th Cir. 2010) ("[A] settlement agreement made in bankruptcy has **no effect** when the parties fail to comply with Fed. R. Bankr. P. 9019, which requires notice to creditors and court approval.") (emphasis added); *In re Tarrant*, 349 B.R. 870, 893 (Bankr. N.D. Ala. 2006) (explaining a settlement has "no effect" without bankruptcy court approval*.); In re Degenaars*, 261 B.R. 316, 319 (Bankr. M.D. Fla. 2001) (same).

### III. KPPOA's Actions Confirm that the Parties Did not Reach a Settlement.

Lastly, KPPOA's own actions contradict its contention that the parties reached an enforceable settlement of this appeal in June 2017.  Indeed, it is impossible to reconcile that contention with KPPOA's own conduct, which included KPOAA's (1) continued ongoing negotiation of settlement terms well into the spring of 2018 as well as (2) KPOAA's preparation

and filing of its appellate brief after it became clear that the parties would ultimately not be able to reach a settlement.  (*See* Dkt. 44-1, pp. 5-34).  Indeed, KPPOA continued to propose new material settlement terms as late as May 2018, long after the date it now claims the parties reached a settlement.  And, had KPPOA really believed a settlement had been consummated in June 2017, it surely would not have waited until August 2018 – after investing substantial resources in preparing an appellate brief on the merits – to raise this issue with the Court.

Finally, as mentioned above, KPPOA has repeatedly admitted that the settlement needs to be finalized.  In KPPOA's Motion, it states on the very first page that the settlement "needs to be finalize[d]."  (Dkt. 44, p. 1).  Furthermore, KPPOA agreed to, and signed, the February 5, 2018 Joint Status Report that specifically represented to the Court that the settlement (not just the settlement agreement) was not finalized.  (Dkt. 39, p. 1).  These statements constitute judicial admissions on the part of KPPOA that the parties have not reached an enforceable settlement. *See, e.g.*, *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 719 (11th Cir. Sep. 29, 2011).[15] "[F]acts judicially admitted are facts established not only beyond the need of evidence to prove them, but also beyond the power of evidence to controvert them."  *See Best Canvas Prod. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983).  As a result, the fact that the settlement has not been finalized—and that there is, therefore, no "settlement" to enforce[16]—is "uncontested."  *See PNC Bank, Nat'l Ass'n v. Goyette Mech. Cty., Inc.*, 140 F.

---

[15] Courts in the Eleventh Circuit regularly bind parties to such admissions.  *See, e.g.*, *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009) (explaining that parties that denied having a principal place of business in Florida "cannot now claim the exact opposite to be true"); *Brown v. Royal Caribbean Cruises, Ltd.*, 549 F. App'x 861, 863 (11th Cir. Nov. 18, 2013) (judicial admission of a written binding agreement).

[16] *See, e.g.*, *Brooks v. Ironstone Bank*, 726 S.E.2d 419, 420 (2012) (reversing grant of petition to enforce the settlement agreement given "*issues of fact as to the existence of a finalized settlement*") (emphasis added); *In the Estate of Huff*, 652 S.E.2d at 206 (affirming probate court's denial of motion to enforce settlement agreement evidence supported the "probate court's determination that the settlement agreement *was not finalized*") (emphasis added).

4828-5007-4481, v. 1

Supp. 3d 623, 632 (E.D. Mich. 2015) ("A binding admission renders a fact 'uncontested' in a summary judgment proceeding.")

Contrary to KPPOA's arguments, the Joint Status Reports on June 27, 2017 and the September 29, 2017 do not contain any judicial admissions by the Liquidation Trustee. The statement in the September 29, 2017 joint status report is equivocal, because the parties state that they "believe in good faith that they will be in a position to have the settlement finalized." *In re Jones*, 197 B.R. 949, 956 (Bankr. M.D. Ga. 1996) ("Any 'deliberate, clear, and unequivocal' statement, either written or oral, made in the course of a judicial proceeding qualifies as a judicial admission."). (*See also* Dkt. 36, p. 1). The statement in the June 27, 2017 status report was made within hours of counsel for the Liquidation Trustee sending counsel for KPPOA an email outlining the terms of a settlement in principle. *See, e.g.*, *Time Ins. Co. v. White*, 354 F. App'x 80, at *1 (5th Cir. Nov. 16, 2009).

But by the time KPPOA made the later-in-time statement in the February 5, 2018 joint status report, such statement was "deliberate," and well within KPPOA's "knowledge or control" given that KPPOA was well aware of all of the "evidence" offered in support of KPPOA's motion and still made such admission. *See, e.g.*, *Triumph Constr. Corp. v. N.Y. City Council of Carpenters Pension Fund*, 29 F. Supp. 3d 373, 380 (S.D.N.Y. 2014) ("This rule holds especially true where the assertion is 'made by one party concerning matters peculiarly within its knowledge or control,' as here, where Triumph made sworn statements in the Petition regarding the agreements into which it entered with the Union."); *In re Jones*, 197 B.R. 949, 956 (Bankr. M.D. Ga. 1996).

In any event, in the February 5, 2018 joint status report, KPPOA and the Liquidation Trustee effectively jointly amended the earlier reports. *See White*, 354 F. App'x 80, at *1

(analyzing issue under FED. R. CIV. P. 15(a));  *Pattee v. Ga. Ports Authority*, 477 F. Supp. 2d 1253, 1259 n.2 (S.D. Ga. 2006) ("When the pleading is amended, however, the prior statement ceases to be a conclusive judicial admission, but still remains competent, though controvertible, evidence.") Of course, when considering whether the statements in such pleadings create a genuine issue of fact that would preclude enforcement of the purported "settlement," the evidence should be viewed – and "all disputed factual inferences" should be drawn – "in the light most favorable" to the Liquidation Trustee.  *Cohen*, 2009 WL 4261161, at *4.

In the face of these facts, KPPOA's decision to file a Motion to enforce a settlement they now claim was reached in June 2017 suggests that this Motion is tactically motivated to influence the underlying appeal.  Whatever KPPOA's motivation in filing the present motion, KPPOA's effort to judicially enforce a purported settlement – the existence and terms of which are plainly disputed by the parties – should be denied out of hand.

## IV. <u>The Court Should Deny KPPOA's Request for Sanctions.</u>

KPPOA's request for sanctions is wholly inappropriate.  The federal courts have the power to impose sanctions against a party for "litigation misconduct" where a party has acted in bad faith by, "*inter alia,* delaying or disrupting the litigation or hampering enforcement of a court order." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009).[17]  There is no such conduct by the Liquidating Trustee at issue here.[18]  After settlement negotiations stalled, KPPOA filed its Appellee's Brief, the Liquidating Trustee in turn filed its reply, and, as a result, the underlying appeal is ready for disposition by the Court.  If any party has "delay[ed] or disrupt[ed] the litigation," it is KPPOA, which has filed a Motion to

---

[17] Sanctions under Federal Rule of Civil Procedure 11 are unavailable because Plaintiff's request does not concern a pleading, written motion, or other paper filed by Defendants. *See* Fed. R. Civ. P. 11(b) & (c).

[18] In addition, this action is entirely dissimilar from *Fitzhugh. See supra* n.8.  As a result, KPPOA's argument that the "justification for entering sanctions in *Fitzhugh* could not be more applicable to the present case" is without merit.  (Dkt. 44, p. 19).

24

enforce a settlement agreement that clearly does not exist in attempt to derail the present appeal. *See Eagle Hosp. Physicians,* 561 F.3d at 1306.

KPPOA's justification for sanctions is even more baffling.  KPPOA claims that sanctions are justified because the Liquidating Trustee refuses to finalize the settlement due to the Liquidating Trustee's "unilateral desire to renegotiate the settlement," and reiterates that KPPOA will not agree to the "new term" of vacatur. (Dkt. 44, p. 19).  Yet, KPPOA's requested exclusion of the "Allowed Scheduled Claims" from the mutual release *is also, by KPPOA's own definition, a "new term" that it has requested that the Court enforce.*[19]  KPPOA's conflicting positions as to vacatur and mutual release in its Motion is simply irreconcilable, and its transparent attempt to distract from this appeal and cast aspersions on the Liquidating Trustee through this Motion should not be permitted.

## CONCLUSION

For the foregoing reasons, KPPOA's Motion should be denied.

Respectfully submitted this 30th day of August, 2018,


| | |
|---|---|
| James L. Drake, Jr. | /s/ Russell E. Stair |
| 7 East Congress Street, Ste. 901 | Paul G. Jennings |
| Savannah, GA 31412 | Russell E. Stair |
| (t): (912) 790-1533 | Bass, Berry & Sims PLC |
| Email: jdrake@drakefirmpc.com | 150 Third Avenue South, Ste. 2800 |
| | Nashville, TN 37201 |
| | Email: pjennings@bassberry.com |
| | Email: rstair@bassberry.com |
| | (*Admitted Pro Hac Vice*) |

*Counsel for Liquidating Trustee*

---

[19] As stated above, KPPOA did not raise the issue of the exclusion of the Allowed Scheduled Claims until September 27, 2017, several months after it claims the parties "consummated" the settlement on June 23, 2017.

4828-5007-4481, v. 1

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served upon the following parties by virtue of the electronic filing of this document via the Court's ECF system on this the 30th day of August, 2018:

Jason M. Tate
ROBERTS TATE, LLC
P.O. Box 21828
St. Simons Island, GA 31522

Thomas R. Walker
McGUIREWOODS LLP
1230 Peachtree Street, NE
Suite 2100
Atlanta, GA 30309

*/s/ Russell E. Stair*

4828-5007-4481, v. 1